IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| James D. Smith, | ) C/A No.: 4:07-1482-HFF-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| | ) |
| Tom Fox; | ) |
| Johnny Brown; | ) |
| Rich Gore; | ) |
| Officer NFN Louholt; | ) |
| Maintenance; | ) |
| Reuben Edge; | ) |
| C/O NFN Bridges; and | ) |
| Sup. Fire Safety and Health | ) |
| Inspector of J. Reuben Long Detention Center, | ) |
| | ) |
| Defendant(s). | ) |
| | ) |

## I.  PROCEDURAL BACKGROUND

The plaintiff, James D. Smith, filed this action under 42 U.S.C. § 1983[1] on April 2, 2008,

alleging violations of his constitutional rights. Plaintiff is currently a pretrial detainee incarcerated

in the J. Reuben Long Detention Center ("JRLDC"). Defendants filed a motion for summary

judgment on February 13, 2008. (Document #40).  Because plaintiff is proceeding pro se, he was

advised on or about February 14, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4ᵗʰ Cir.

1975), that a failure to respond to the defendants' motion for summary judgment with additional

evidence or counter affidavits could result in dismissal of his complaint. The plaintiff filed a

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because
this is a dispositive motion, the report and recommendation is entered for review by the District
Judge.

response on February 26, 2008, (document #43) and defendants filed a reply on March 6, 2008

(document #45).[2]

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges indifference to his medical needs and a constitutional violation due to

the conditions of confinement at the JRLDC consisting of overcrowding and an accumulation of

leaking water. As a result of this condition, plaintiff alleges that he slipped and fell on January 31,

2007, resulting in injuries to his shoulder and back. The allegations in plaintiff's complaint are set

forth herein, *quoted verbatim*:

> On the day of 1/31/2007, I slip[p]ed and fell in water in the unit I was
> housed in as a result I hurt my shoulder and back. The officer witness
> the fall and call in a Code Black for help. I was taken to the local E.R.
> x-rayed my left shoulder and side but my back was never x-rayed or
> check even though I told the Doctor's nurses also officer's that my
> back was hurting too. The Doctor give me a prescription for pain
> killers when return to jail the only pain killer was giving to me was
> Ibprophin for a period of five days and I'm still hurting but I have yet
> to receive any proper medical treatment. The reason why I fell was
> because of a leak that was coming from the shower. This leaking
> water from the shower and all the way down the hall. The water in
> front of the cells in MaxB-1 unit was in front of rooms 148-B, 147-B,
> 146-B, also 145-B and in the middle of the unit which is a fire, safety

---

[2] On October 31, 2007, defendants filed a motion to quash service on "Sup. Fire, Safety and Health Inspector" asserting that this is a non-existent defendant. Defendants submitted the affidavit of Major Joey Johnson of the JRLDC who avers that there is no fire safety and health inspector, or a supervisor of such at the JRLDC. Defendants further assert that even though the mail delivering the copy of the Summons and Complaint was signed for by an administrative assistant at the JRLDC, she is not and never has been a fire, health, and safety inspector or supervisor and clearly signed the mail in error. Therefore, defendants assert that any purported service of the Summons an complaint on this non-existent defendant should be deemed ineffective and insufficient and should be quashed and set aside. Plaintiff did not file a response to this motion. It is recommended that this motion (document #25) be GRANTED.

had health Hazard. This violation has been going on possibly for the last few years and has been brough[t] to Tom Foxes maintance and staff attention on more than one occasion, but there was not action taken on the matter. After I had fell and got hurt it was brought to my attention by Officer Johnny Brown C.O Rich Gore and Co. Bridges that this leak has been leaking for the pass few years. Upon returning from E.R. I was place back in my cell on the floor [due] to the over crowding and I was still in pain. Each unit have cameras when a code call they record the incident and the in unit is suppose to write an incident report of what took place. On May 13, 2007 Co. B. Chrisco informed me that the leak in Max B-1 unit had been repair after I was hurt.

(Complaint).

Plaintiff requests that he be paid for "medical also for pain suffering of me and my family. Lost of wages pay for neglect and neglecting of proper medical treatment which I'm still in pain. Do more Fire, Safety and Health inspection. Fix all shower's and plumbing drainage system within the building also reduce over crowding in jail."  (Complaint, p. 5).

## B.  STANDARD FOR SUMMARY JUDGMENT

As previously stated, defendants filed a motion for summary judgment.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material

3

fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the

moving party makes this showing, however, the opposing party must respond to the motion with

"specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on

the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S.

317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both

parties have had ample opportunity to explore the merits of their cases and examination of the case

makes it clear that one party has failed to establish the existence of an essential element in the case,

on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the

movant can show a complete failure of proof concerning an essential element of the non-moving

party's case, all other facts become immaterial because there can be "no genuine issue of material

fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of

law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements

of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

### C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process

clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the

Eighth Amendment.  Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this

distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has

> complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime.  Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam).  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.  Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986).  Further, while the court should afford a *pro se* litigant every reasonable opportunity

5

to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

## D. MEDICAL INDIFFERENCE

As previously stated, plaintiff alleges that while a pretrial detainee at JRLDC he suffered deliberate indifference to his medical needs.

Defendants assert in their motion for summary judgment that plaintiff received adequate care and there was no medical indifference with regard to his medical care on their part. Defendants note that plaintiff has not sued any medical personnel regarding his claim to deliberate indifference to a serious medical need. Defendants assert that plaintiff makes no allegations that any of the defendants failed to deliver him to medical personnel or to provide him with attention prior to his treatment. Defendants submitted the nurses' notes from JRLDC and the hospital notes with regard to his injury of January 31, 2007, as well as, records from his alleged fall on January 28, 2007, and his trip to the Emergency Room on January 29, 2007.

A review of the nurse's notes from JRLDC reveal that a Code Black was called on January 31, 2007, that an inmate had slipped and fell on a wet floor. The nurse's notes reveal that when she arrived, the inmate was lying on his "back more so on L side" and was alert and able to respond verbally. The nurse noted that plaintiff denied hitting his head. The notes also reveal that the inmate stated that he could not move his left side or left arm. EMS was called and arrived placing inmate on the back board and transported him to the Conway Emergency Room for evaluation. (See defendants' exhibit, docket entry #40-6), nurses' notes dated January 31, 2007).

Defendants also submitted the physician's notes and emergency room records as exhibits to

6

their motion. A review of these records reveal that plaintiff was seen in the Emergency Room of the

Conway Medical Center on January 31, 2007, complaining of left shoulder pain and discomfort

having fallen as he was leaving the shower. The notes also noted that "he had been in J. Ruben Long

about a week and a half. This is the 3rd ER visit. First ER visit was at Grand Strand. Their notes are

reviewed by Battisti. Second visit was here with Dr. Battisti. Each time associated with a fall."

(Docket entry #40-4 Emergency Department Report). It was noted on this visit of January 31, 2007,

that plaintiff complained of left shoulder pain but denied any cervical, thoracic, lumbar pain. X-rays

of the shoulder were performed which revealed no fractures and a physical examination was

performed. He was released back to the JRLDC.

Defendants also attached the records from the previous two Emergency Room visits on

January 28, 2007, and January 29, 2007. On the visit to Grand Strand Hospital Emergency Room,

the report reveals that plaintiff stated he fell out of the "paddy wagon" and hurt his left shoulder and

head. Cervical spine x-rays and left shoulder x-rays were negative. Plaintiff was given Vicodin and

discharged on Ibuprofen. Based on these complaints, cervical spine and left shoulder x-rays were

taken and were negative. (Docket entry #40-7). On the next day, January 29, 2007, plaintiff was

again taken to the Conway Hospital Emergency Department asserting he could not move his

extremities but it was noted that the officers reported to the physician that they had seen him move

his extremities, despite his claims of not being able to do so. A CT scan of the head was negative and

the C-spine was negative for fracture. The attending physician noted that perhaps plaintiff was

malingering and released him advising to take Tylenol or Motrin. (Docket entry #40-8).

Defendants also submitted the records from Grand Strand Regional Medical Center dated

April 16, 2007, when plaintiff was not incarcerated, revealing he came to the emergency room

complaining of shoulder pain. The physician's report reveals that plaintiff was a well-appearing male in no acute distress, has full range of motion of his shoulder, he was able to easily get his shirt and sweater off without difficulty raising his arm completely above his head. They reviewed his previous x-rays which were negative for any fracture and "at that pont, the patient was directed towards registration where he elected not to continue his care here at South Strand Ambulatory Care Center." (Docket entry #40-9).[3]

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).  The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . .  We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

---

[3]    Plaintiff filed a response in opposition to the motion for summary judgment basically repeating the allegations in his complaint.

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S.

9

1041 (1981)).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v.

10

Thompson, 868 F. Supp. 326 (S.D.Ga. 1994).  Further, a disagreement as to the proper treatment to

be received does not in and of itself state a constitutional violation.  See Smart v. Villar, 547 F. 2d

112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986).  Mistakes of medical

judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319

(4th Cir. 1975).

In the present case, the plaintiff's allegations are brought against employees of the JRLDC

and the Superintendent, Fire, Safety and Health Inspector at JRLDC. First, the undersigned notes that

the defendants are not medical personnel.  The Fourth Circuit has held that to bring a claim alleging

the denial of medical treatment against non-medical prison personnel, an inmate must show that such

officials were personally involved with a denial of treatment, deliberately interfered with prison

doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct.

Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990).  Prison personnel may rely on the opinion of the

medical staff as to the proper course of treatment.  *Id.*  Under these principles, the plaintiff has not

alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment

against the defendants who are non-medical personnel.

Furthermore, in his complaint, plaintiff admits that time he fell on January 31, 2007, the

officer called a "Code Black for help" and he was taken to the local emergency room where he

received x-rays of his shoulder and side.  The nurses' notes from the JRLDC reveal that she

examined plaintiff after the Code Black was given and that he was alert and responsive and that EMS

was called to transport him to the hospital for evaluation. Plaintiff argues that he was not given

prescription pain killers once he returned to the jail but was only given Ibuprofen for five days for

the pain. However, plaintiff did receive medication at the JRLDC for his pain and was immediately

sent for evaluation to the hospital after his fall for his alleged pain. Thus, although plaintiff did not

agree with the type of treatment he received, the fact is plaintiff was provided treatment. As

previously stated, plaintiff did not name any medical personnel as a party defendant. Plaintiff has

failed to show that defendants were personally involved with any alleged denial or delay of treatment

or that they deliberately interfered with plaintiff's medical treatment.[4] Therefore, any claims against

these defendants for medical indifference fails.[5]    Thus, the undersigned recommends that the

motions for summary judgment filed by defendants be granted as it relates to the plaintiff's claims

of medical indifference.


### E, CONDITIONS OF CONFINEMENT

As stated previously, the plaintiff complains that the JRLDC is overcrowded and that water

leaking from the showers was allowed to accumulate on the floor outside of the shower units which

is a hazard causing him to fall and suffer injuries.

Defendants submitted the affidavit of Major Joey Anderson, deputy director of the JRLDC,

who attests that the personnel in the facility are constantly taking measures to eliminate any

possibility of danger or injury to detainees. Further, he attests that the JRLDC has plumbers on call

---

[4] Injury as a result of the fall itself, is simply a negligence claim not cognizable under Section 1983. Negligence, in general, is not actionable under 42 U.S.C. § 1983 and negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983.

[5] Even assuming *arguendo* that these defendants had been directly involved, a review of plaintiff's medical records submitted by defendants reveal plaintiff received treatment and was sent to the hospital for evaluation and treatment. Based on the above, plaintiff's claims of medical indifference, if any, must fail as a matter of law. Thus, the undersigned recommends that the motion for summary judgment filed by defendants be granted as it relates to the plaintiff's claims of medical indifference.

to deal with any plumbing issues that may arise. (See Anderson affidavit, document #40-3).

As discussed above, defendants made every effort to ensure that the medical needs of the plaintiff were met by calling the nurse immediately after his fall and sending him by EMS to the hospital for evaluation. As demonstrated by the medical records from the hospital, plaintiff received x-rays which were normal and he was released back to the JRLDC.

Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441 U.S.at 535 n.16.  To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred.  Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)).  Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering.  Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916 (1995).  The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.  However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process-- even though the conditions imposed serve some ordinarily legitimate state objective."  Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986). The plaintiff

13

must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants.  Strickler v. Waters, 989 F.2d 1375, 1379 (4ᵗʰ Cir., cert. denied, 510 U.S.949 (1993)).  Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim.  Id. at 1380-1381.

With respect to any complaints concerning overcrowding, the JRLDC may have in fact had an excess of inmates during the relevant time period, but that does not mean plaintiff's constitutional rights were violated. It is "well established that 'double or triple celling of inmates is not per se unconstitutional.'" Hause v. Harris, 2008 WL 216651 (D.S.C. January 23, 2008) *citing* Mathias v. Simpkins, 2007 WL 1577336 at *2 (W.D. Va. May 31, 2007).  Plaintiff has failed to show that he has suffered any significant injury as a result of any overcrowding.  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11ᵗʰ Cir. 1985)[the fact that pretrial detainee temporarily had to sleep on a mattress on the floor or on a table "is not necessarily a constitutional violation."].

Plaintiff has not presented evidence to create a genuine issue of material fact as to whether plaintiff was denied the minimal civilized measure of life's necessities, or that any named defendant engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Plaintiff has not shown that  he was deprived a "basic need" and that these deprivations were attended by deliberate indifference on the part of the defendants.  Strickler, supra  Further, plaintiff has failed to show any express intent on the part of the defendants to punish him. Based on the reasons discussed above, the undersigned

14

recommends that summary judgment for the defendants be granted. [6]

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any detainee, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra. As previously discussed, the Supreme Court noted that the administration of detention facilities is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the facility and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

### F.  QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982). Defendants argue that  plaintiff is unable to state a constitutional

---

[6]    Further, any allegations plaintiff may be attempting regarding other inmates must fail. To state a civil rights claim, one must allege that he, himself, sustained a deprivation of right, privilege, or immunity secured by the Constitution of federal law. Inmates v. Owens, 561 F.2d 560, 562-63 (4th Cir. 1977). To demonstrate standing, plaintiff must allege personal injury fairly traceable to defendant's allegedly unlawful conduct and likely to be redressed by requested relief. Allen v. Wright, 468 U.S. 737, 751 (1984).

claim against them.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the

> specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent."  As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995).  As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity in their individual capacity.  Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.

### G. ELEVENTH AMENDMENT IMMUNITY

 The defendants contend that the plaintiff's §1983 claims against the defendants for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest.  If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the JRLDC and, therefore, they are entitled to Eleventh Amendment immunity from monetary damages.

## H. PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### III.  CONCLUSION

The plaintiff has failed to show that defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendants (document #40) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.

Respectfully Submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 2, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**